# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACEY L. CHALK | * | |
| On Behalf of a Class of Similar Persons | * | |
| | * | |
| v. | * | Civil Case No. CCB-13-1593 |
| | * | |
| LENDER PROCESS SERVICES, INC. | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Counter Plaintiff Tracey L. Chalk ("Ms. Chalk") initiated this action against Counter Defendant Lender Processing Services, Inc. ("LPS"), alleging violations of federal and state debt collection statutes. Specifically, Ms. Chalk alleges that LPS threatened foreclosure actions against her and others without a license to act as a collection agency in Maryland. Ms. Chalk alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401 *et seq.* She seeks certification of a class action based on these alleged violations, and seeks compensatory and statutory damages, injunctive relief, declaratory relief, and attorney's fees. Now pending are LPS's motion to strike, [ECF No. 11], and its motion to dismiss the complaint for failure to state a claim upon which relief can be granted, [ECF No. 15].

This court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, LPS's motion to dismiss will be granted, and LPS's motion to strike will be denied as moot.

# BACKGROUND

Taken in the light most favorable to the plaintiff, the facts of this case are as follows. Ms. Chalk and her then husband, Donald Chalk, ("Mr. Chalk") purchased a home in Anne Arundel County, Maryland "nearly 15 years ago." Counter-compl. ¶¶ 40, 41. On or about May 18, 2005, Mr. Chalk entered into a loan with National City Mortgage, part of National City Bank of Indiana, and Ms. Chalk endorsed the Deed of Trust as security for the May 18, 2005 loan.[1] *Id.* at ¶ 41-42. In February and March 2009, Mr. and Ms. Chalk entered into a loan modification with National City Mortgage. *Id.* at ¶ 43. Later, at an unspecified time, Mr. Chalk ceased all support for Ms. Chalk, and she was unable to afford the monthly payments. *Id.* On or about March 31, 2010, Ms. Chalk received a Notice of Intent to Foreclose ("NOITF") that identified PNC Mortgage ("PNC") as a secured party and servicer of the loan.[2] *Id.* at ¶ 44. Ms. Chalk alleges that the NOITF was "deficient" and "misleading" because it did not identify all secured parties on the loan, including Freddie Mac, owner of the subject loan. *Id.* at ¶¶ 45, 48. Shapiro & Burson commenced foreclosure proceedings on Ms. Chalk's home on or about May 20, 2010 in the Circuit Court for Anne Arundel County, Maryland, but moved to dismiss the case less than nine months later. *Id.*

In April 2011 another law firm, Rosenberg & Associates, received a referral from PNC to begin foreclosure activity on Ms. Chalk's property. Mark D. Meyer Aff. ¶ 10. In an October 2011 phone call, PNC informed Ms. Chalk that it had scheduled a foreclosure sale on her property for November 2011. Counter-compl. ¶ 50. Over the course of ten months in 2011 and 2012, Ms. Chalk received three separate NOITFs from Rosenberg & Associates, none of which

---

[1] This mortgage presumably was entered into as part of a refinance of the original mortgage, as its settlement occurred in 2005 and not "nearly 15 years ago" when the house was originally purchased. Counter-compl. ¶ 40-42.

[2] The counter-complaint does not specify when the mortgage was transferred to PNC.

identified Freddie Mac, whom Ms. Chalk contends was statutorily required to be listed as a secured party on the notice. *Id.* ¶¶ 49, 51, 53. At some point, Rosenberg & Associates was instructed to put the foreclosure on hold. Meyer Aff. ¶ 12. However, "on or about June 13, 2012, Rosenberg & Associates was instructed by LPS, a service provider for PNC, to commence with a foreclosure." *Id.* Rosenberg & Associates subsequently sent Mr. and Mrs. Chalk another NOITF on or about June 25, 2012. [ECF No. 17, Exh. 1, at 19]. It listed PNC Bank as a secured party and PNC Financial Services Group as the loan servicer, and provided a contact number. *Id.* at 22.

On January 8, 2013, Plaintiffs Diane Rosenberg, et al., ("the Rosenberg plaintiffs") initiated foreclosure proceedings on Ms. Chalk's property in the Circuit Court for Anne Arundel County. Counter-compl. ¶ 54. Included in the filing were two affidavits: an affidavit of note ownership identifying the Federal Home Loan Mortgage Corporation ("Freddie Mac") as the owner of the May 18, 2005 note, [ECF No. 17, Exh. 1, at 45], and another affidavit attesting that the June 25, 2012 NOITF was accurate, *id.* at 68-69. On March 15, 2013, the Rosenberg plaintiffs moved for voluntary dismissal of the foreclosure action so that they could send Ms. Chalk a new NOITF and thereby eliminate her complaint that the NOITFs she received were defective. [ECF No. 17, Exh. 17].

Before that motion for voluntary dismissal was ruled on, Ms. Chalk filed this class action counter-complaint, on behalf of herself and all others similarly situated, against LPS, alleging that LPS illegally acts as a debt collection agency in the state of Maryland without license to do so.[3] [ECF No. 17, Exh. 14]. On April 16, 2013, Judge Paul A. Hackner granted the Rosenberg motion for voluntary dismissal. [ECF No. 17, Exh. 21]. Ms. Chalk's putative class action was

---

[3] At the same time, Ms. Chalk requested the issuance of a Writ of Summons in order to add LPS as an additional party.

removed to the United States District Court for the District of Maryland on May 31, 2013. [ECF No. 1]. The counter-complaint includes four counts. Count One seeks declaratory relief, an injunction to enjoin LPS from continuing to operate without a license in Maryland, and that LPS be ordered to disgorge all amounts it obtained while allegedly acting as a collection agency in Maryland. Counter-compl. ¶¶ 75-78. Count Two alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Counter-compl. ¶¶ 79-84. Count Three alleges violations of the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7-401 *et seq.* Counter-compl. ¶¶ 85-94. Count Four alleges that LPS benefited in unjust enrichment as a result of its illegal collection actions. *Id.* ¶¶ 95-99. Ms. Chalk seeks total damages in excess of $10,000 for herself and $10 million for the class, as well as treble damages, injunctive relief, attorney's fees, and litigation costs.

**ANALYSIS**

**I. Preliminary Procedural Issue**

Before discussing the merits of LPS's motions, it is necessary to address Ms. Chalk's preliminary argument that the motion to dismiss is procedurally barred. In general, Rule 12(g) restricts a party from making further motions under Rule 12 where a defense or objection could have been made in an earlier motion, but was omitted. Fed. R. Civ. P. 12(g)(2). LPS filed a motion to strike pursuant to Fed. R. Civ. P 12(f) on June 7, 2013, alleging that a number of paragraphs in Ms. Chalk's counter-complaint were "redundant, immaterial, impertinent, or scandalous." [ECF No. 11-12]. On June 21, 2013, LPS filed a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6). [ECF 15].

Rule 12(g) was designed to avoid delays caused by successive pretrial motions 5C Wright & Miller, Federal Practice and Procedure § 1384, at 208 (3d ed. 2004); *see also Ennenga*

*v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground.") (citing *Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st Cir.1988))). No such delay was incurred here. LPS filed its motion to dismiss fourteen days after the motion to strike, before the first motion was ruled on. Moreover, Ms. Chalk was not prejudiced by the timing of the motions. Rule 15(a)(1)(B) allowed her twenty-one days after service of the Rule 12(f) motion to strike to amend her complaint as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). She chose not to amend her complaint even after the motion to dismiss was submitted, instead filing an opposition to LPS's motion to strike. Furthermore, the Rule 12(b)(6) defense of failure to state a claim for relief is one of the enumerated defenses protected against waiver under Rule 12(g). Fed. R. Civ .P. 12(h)(2). A number of courts have taken a permissive approach to Rule 12(g) and allowed those enumerated defenses to be raised at other times, which comports with the underlying purpose of Rule 12(h)(2) — to preserve defenses. Wright & Miller, § 1392. Because LPS's timing of the motion to dismiss neither caused a delay, nor induced Ms. Chalk to waive the right to amend her complaint, I consider both motions below.[4]

 **II. Motion to Dismiss**

LPS contends that Ms. Chalk's complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the

---

[4] Because granting the motion to dismiss would render the motion to strike moot, I will address it first.

court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Federal Bureau of Investigation*, 1 F.3d 255, 256 (4th Cir.1993)).  The court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alternations omitted).  It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 678 (internal quotations and citation omitted).

LPS asserts that Ms. Chalk's complaint must be dismissed for two reasons. First, LPS contends that each count of the counter-complaint fails as a matter of law, because it is not a debt collector and has not engaged in debt collection activities.  Second, LPS avers that Ms. Chalk's counter-complaint falls short of the applicable pleading standards, includes irrelevant and

immaterial factual allegations, and attempts to impute to LPS the collection activities of other entities.

*I. Fair Debt Collection Practices Act Claim*

To prevail on a FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005) (citing *Fuller v. Becker & Poliakoff*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002)). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Ms. Chalk alleges that LPS was attempting to foreclose on a mortgage on her real property, and in doing so violated 15 U.S.C. § 1692e(5) (violation where a debt collector "threat[ens] to take any action that cannot legally be taken or that is not intended to be taken") and 15 U.S.C. § 1692f (violation occurs where a "debt collector . . . use[s] unfair or unconscionable means to collect or attempt to collect any debt").

LPS's counter argument has two sub-parts: first, that Ms. Chalk has failed to identify a communication or act by LPS that violates the FDCPA, and second, that it did not act as a debt collector within the meaning of the FDCPA in relation to Ms. Chalk's mortgage.

In regards to the alleged communication or act, Ms. Chalk asserts that LPS's role in collecting her mortgage has been established by attorney Mark Meyer's affidavit testimony that his firm, Rosenberg & Associates, "was instructed by LPS, a service provider for PNC, to

commence with a foreclosure."[5] Counter-compl. ¶ 45, 52; Meyer Aff. ¶ 12.[6] In her view, by instructing the law firm to send her a defective NOITF, LPS engaged in indirect collection activities. Further, Ms. Chalk argues that LPS acted as an unlicensed debt collector in violation of the Maryland Collection Agency Licensing Act, Md. Code Ann., Bus. Reg., § 7–101, *et seq*. ("MCALA"). The FDCPA regulates debt collectors who "regularly collect or attempt to collect, directly or indirectly, consumer debts owed or due another." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. 1692a(6) (alterations omitted)); s*ee also Bradshaw v. Hilco Receivables*, LLC, 765 F. Supp. 2d 719, 725 (D. Md. 2011) (finding that litigation to collect a debt constitutes collection activity under the FDCPA). Violations of the MCALA may support a claim under the FDCPA. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 519 (D. Md. 2013); *see also Bradshaw*, 765 F.Supp.2d at 729 (declining to find that a violation of the MCALA constitutes a *per se* violation of the FDCPA, but holding that it may support a cause of action under the FDCPA); *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1200 (11th Cir. 2010) (finding that a debt collector's failure to register under a state debt collection law is appropriate to consider in determining whether its means of collection were "unfair or unconscionable").

Both questions — whether LPS's alleged indirect act constitutes a violation of the FDCPA and whether it acted as an unlicensed debt collector — turn on the role LPS played in the servicing, ownership, or collection of Ms. Chalk's delinquent mortgage. Ms. Chalk avers that Mr. Meyer's statement that his firm was "instructed by LPS, a service provider for PNC" to commence foreclosure actions sufficiently ties LPS to the deficient NOITFs to make the

---

[5] At times, the counter-complaint incorrectly identifies Mr. Meyer's firm as Shapiro & Burson. Counter-compl. ¶ 45.
[6] This affidavit was submitted in connection with a related suit filed by Ms. Chalk against PNC, which was voluntarily dismissed in February 2013. See Civil Case No. CCB-11-3052.

company liable for violations of the FDCPA and related state laws. Additionally, she proffers general statements about LPS's offered business services, made on its website and in its Form 10K filed with the Securities and Exchange Commission, that she alleges show LPS acted as an unlicensed debt collection agency in Maryland. Counter-compl. ¶ 15, 16. However, LPS asserts that Mr. Meyer's reference to "LPS" stems from its software platform, LPS Desktop.

Because Ms. Chalk has only alleged facts linking LPS to the June 25, 2012 NOITF, *see* Meyer Aff. ¶ 12, I will limit my inquiry to that NOITF. Ms. Chalk does not allege that LPS had any interest in her mortgage, that LPS was a secured party that should have been listed on the NOITF, or that LPS purchased her debt from the loan originator. Further, she does not allege facts demonstrating that LPS had any interest in her loan that would allow it to bring suit against her to collect on the delinquent account. Moreover, the counter-complaint does not offer factual allegations supporting an inference that LPS undertook any actions in relation to Ms. Chalk's loan that rose to the level of actions undertaken by similar defendants in cases that have survived a 12(b)(6) motion to dismiss. *See Ademiluyi*, 929 F. Supp. 2d 502 (defendant's subsidiaries purchased and serviced plaintiff's mortgage); *Bradshaw*, 765 F. Supp at 726 (defendant company acquired plaintiff's delinquent account); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 361 (D. Md. 2010) (defendant company purchased the debts of named plaintiff and others, filed lawsuits to collect the debts, and submitted affidavits to the court stating that the company had a right to collect the debts). Without more to establish that LPS undertook a role in the servicing of Ms. Chalk's mortgage greater than that briefly stated in the Meyer affidavit, the facts pled in Ms. Chalk's counter-complaint simply do not meet the plausibility threshold or give rise to a reasonable inference that LPS is liable as a debt collector in regard to her mortgage. *See Iqbal*, 556 U.S. at 678. The counter-complaint includes a great deal of information pertaining to LPS's

business activities in general and alleged past transgressions in Maryland, but fails to draw a link between those activities and any foreclosure actions on Ms. Chalk's mortgage. Because Ms. Chalk's counter-complaint lacks sufficient facts to establish that LPS acted as a "debt collector" under the FDCPA in regards to her loan, defendant's motion to dismiss as to Count II will be granted.

*II. Maryland Mortgage Fraud Protection Act*

Ms. Chalk next alleges that LPS has committed mortgage fraud under the Maryland Mortgage Fraud Protection Act ("MMFPA") by "knowingly making [a] deliberate misstatement, misrepresentation, or omission[,] . . . [or] knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process." Counter-compl. ¶ 92-93; *see* Md. Code Ann., Real Prop. § 7-401(d)(1), (3). The "mortgage lending process" includes the "solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan[.]" § 7-401(e)(2)(i). Ms. Chalk claims that LPS committed mortgage fraud by: (1) misrepresenting or misstating its right to collect mortgage payments in Maryland without a license to do so, and (2) by threatening foreclosure actions against her and class members without disclosing its interest in the subject mortgages on any NOITFs. Counter-compl. ¶ 93. As discussed above, Ms. Chalk has not alleged sufficient facts to establish that LPS was required to be licensed in relation to its activities on her loan.

Further, Ms. Chalk's claims regarding the sufficiency of the NOITFs are without merit. First, she has not alleged that LPS had any interest in her loan that was required to be disclosed on any NOITF. Second, Ms. Clark's contention that the NOITF contained a false representation because it did not disclose Freddie Mac's ownership interest in her mortgage is based on a

premise that was recently rejected by the Maryland Court of Appeals. *See Shepherd v. Burson*, 427 Md. 541, 556-60 (2012) (holding that the failure to disclose Freddie Mac's ownership interest in a mortgage on a NOITF did not warrant the dismissal of the related foreclosure action and, further, did not render the NOITF "unfair," "deceptive," or "misleading").

Ms. Chalk argues the *Shepherd v. Burson* is only applicable to NOITFs sent prior to a July 1, 2011 amendment to the foreclosure procedures statute, Md. Code Ann., Real Prop. § 7-105.1, requiring an affidavit stating that the NOITF was accurate at the time sent be included in a complaint to foreclose a mortgage. Pl's Counter to Def's Mot. to Dismiss, at 10; [ECF No. 21]. However, the issue is irrelevant. The Rosenberg plaintiffs voluntarily dismissed the foreclosure action, so that they could send a new NOITF to Ms. Chalk. [ECF No. 5, ¶¶ 8-9]. Even assuming the June 25, 2012 NOITF was inaccurate to the point of violating § 7-105.1 after the 2011 amendments, Ms. Chalk has failed to show any harm, since the resulting foreclosure action was later dismissed. Accordingly, the motion to dismiss as to Count III of the counter-complaint will be granted.

   *III. Unjust Enrichment*

In Count IV, Ms. Chalk asserts a claim for unjust enrichment on the ground that LPS "is not and was not entitled to receive any benefit or payments from Counter Plaintiff and Class Members as a result of collection actions they pursued directly or indirectly . . . because it did not have the legal right or legal standing to have even initiated the collection efforts[.]" *Id.* ¶ 96. To establish unjust enrichment, Ms. Chalk must show that: (1) she conferred a benefit upon LPS, (2) LPS knew or appreciated the benefit, and (3) LPS's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow it to retain the benefit without payment in return. *Benson v. State*, 389 Md. 615, 651-52 (citing *Caroline County v.*

*Dashiell*, 358 Md. 83, 95 n. 7 (2000)). The burden is on the plaintiff to establish that the defendant holds the plaintiff's money and that it would be unconscionable to allow him to retain it. *Plitt v. Greenberg*, 242 Md. 359, 364 (1966). Ms. Chalk's claim is without merit. She has failed to show where any inequity lies, because the complaint is devoid of factual allegations supporting an inference that she conferred a benefit on LPS. She asserts that LPS collects or attempts to collect foreclosure fees through civil litigation in Maryland courts, counter-compl. ¶ 27, but does not allege that she actually paid any such fees.[7]

### IV. Declaratory and Injunctive Relief

Count I requests "class declaratory and injunctive relief" in the form of a declaration that "LPS has acted unlawfully as a collection agency in . . . Maryland[,]" disgorgement of "all amounts obtained while acting illegally as a collection agency without a license[.]" and an injunction barring LPS from "continuing to operate illegally without a license." Counter-compl. ¶ 76-78. LPS argues that the requested remedies are inappropriate because Ms. Chalk has failed to show it has engaged in any activity that would require a license; and that without a pending foreclosure related to the allegedly defective NOITF sent to Ms. Chalk, she has suffered no injury in fact.

Because Ms. Chalk has failed to allege facts sufficient to show that LPS violated the FDCPA, MCALA, or MMFPA, or benefited from any unjust enrichment, her request for equitable relief is moot. The motion to dismiss Count One, therefore, will be granted.

---

[7] Ms. Chalk also contends that "upon information and belief, LPS and its privies" charged her mortgage account related to the improper foreclosure action filed against her, counter-compl. ¶ 59, but does not assert that she actually paid the putative fees. She further alleges "upon information and belief, LPS and PNC contend" that she is responsible for costs and fees associated with a 2011 foreclosure action, *Burson v. Chalk*. Counter-compl. ¶ 48. However, she has offered no factual support linking LPS to the 2011 action.

*V. Class Allegations*

Regarding the class allegations made, *id.* ¶ 61-74, if a named plaintiff's individual claims are found to be without merit prior to certification, then dismissal of the entire complaint is appropriate. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (citations and alterations omitted); *see also J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008) (finding dismissal proper where class representative's claims are found meritless before class certification

## CONCLUSION

For the foregoing reasons, LPS's motion to dismiss will be granted. Accordingly, the motion to strike paragraphs of the counter-complaint will be denied as moot.

A separate order follows.


Dated: <u>December 31, 2013</u>　　　　　　　　　　　<u>　　　　/s/　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge